IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JAMES RAY STARLING, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 10-3413-CV-S-ODS |
| ) | Crim. No. 07-03074-01-CR-S-ODS |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

ORDER AND OPINION (1) DENYING MOTION FOR POSTCONVICTION RELIEF AND
(2) DENYING CERTIFICATE OF APPEALABILITY

Pending is Movant's application for postconviction relief. The request is denied, and the Court declines to issue a Certificate of Appealability.[1]

I. BACKGROUND

A. Procedural History

Movant was indicted in July 2007 on four counts of manufacturing child pornography and one count of possessing child pornography. The Indictment also sought forfeiture of the equipment Movant used to manufacture, store, or distribute child pornography. Movant pleaded guilty to one of the charges of manufacturing child pornography (Count III) in exchange for a dismissal of the remaining substantive charges. The plea agreement provided that Movant agreed to forfeit the property in question. The plea agreement also included certain predictions and agreements regarding the Sentencing Guidelines. It contemplated a base offense level of 32 and an

---

[1]At the Court's direction the Government filed a Surreply. Movant responded by filing a document entitled "Motion for Judicial Notice," but the body of the document responds to the Surreply and does not ask the Court to take judicial notice of anything. The motion (Doc. # 11) is therefore denied, and the arguments presented will be considered as a response to the Surreply.

additional two levels (pursuant to USSG § 2G2.1(b)(1)(B)) because the victim was thirteen. The parties specifically disagreed whether three other enhancements (USSG §§ 2G2.1(b)(2)(A), 3B1.3, and 2G2.1(b)(5)) were applicable. The final guideline issue addressed was an agreement that the Government would support a three-level reduction for Movant's acceptance of responsibility. As discussed more fully below, at sentencing the Court imposed three two-point enhancements (in addition to the one agreed to by the parties), resulting in Adjusted Offense Level of 40. When combined with Movant's Criminal History Category of IV, the recommended guideline range was 292 to 360 months, with a statutorily-mandated minimum sentence of fifteen years. The Court sentenced Movant to 360 months imprisonment. Movant appealed his sentence, arguing that the three additional enhancements should not have been applied. The Court of Appeals granted the Government's motion to dismiss the appeal, holding that the matters sought to be raised fell within a valid and enforceable waiver limiting Movant's right to appeal. United States v. Starling, No. 08-3032 (8th Cir. Apr. 27, 2009), cert. denied, 130 S. Ct. 347 (2009).

The Plea Agreement contains a factual basis for the plea, which Movant endorsed not only by entering the Plea Agreement but in his statements during the change of plea hearing. Plea Tr. at 6-7. The factual recitation establishes that Movant was living with a thirteen year-old girl (N.L.), that he knew that N.L. was thirteen, and that he "engaged in acts of sexual intercourse with" her. The recitation also establishes that Movant "took pornographic pictures of N.L." on a variety of cameras and a cellphone, then downloaded the images onto a variety of computers. One of the computers contained pornographic images of children other than N.L. Count III – the count to which Movant pleaded – involved the pornographic pictures taken of N.L. on the cellphone, which Movant admitted was manufactured in Korea and "had been mailed, shipped and transported in interstate and foreign commerce."

The Presentence Investigaton Report ("PSR") contained additional facts about Movant's conduct: most of these facts were not objected to and were adopted by the Court, while some were implicated by objections that were overruled by the Court. Movant encountered N.L. as she was walking along the road; she indicated she did not

2

want to go home because she was having difficulties with her parents. N.L. said she thought Movant was taking her to school, but he drove in a different direction. Movant supplied N.L. with marijuana, methamphetamine, and crack cocaine. He also physically abused her and threatened to kill her if she called the police. Ironically, "[i]n a written statement, Starling claimed he was trying to 'help' the girl and prevent her from being 'taken in by some real wacked out psycho.'" PSR, ¶ 19.

Like the parties, the PSR concluded the Base Offense Level was 32 and that two points were to be added pursuant to USSG § 2G2.1(b)(1)(B) because N.L. was between the ages of twelve and sixteen. The PSR also recommended the addition of three two-point enhancements, the last of which was not addressed in the Plea Agreement:

- 2G2.1(b)(2)(A) – because the offense involved sexual contact between Movant and N.L.
- 2G2.1(b)(5) – because N.L. was in Movant's custody, care or supervisory control.
- 3A1.1 – because Movant knew or should have known N.L. was a vulnerable victim.

Movant's objections to these enhancements were overruled.

## II. DISCUSSION[2]

Most of Movant's arguments are predicated on claims of ineffective assistance of counsel. A claim of ineffective assistance of counsel is governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). "This standard requires [the applicant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995), cert. denied, 517 U.S. 1214 (1996) (quoting Lawrence v. Armontrout, 961 F.2d 113, 115 (8th Cir.

---

[2]The Court concludes a hearing is not necessary because all of Movant's claims can be addressed based on the already-existing Record.

1992)). This analysis contains two components: a performance prong and a prejudice prong.

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," Strickland, 466 U.S. at 690, while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Id. at 689. Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'" Lawrence, 961 F.2d at 115 (quoting Strickland, 466 U.S. at 694).

Id. Failure to satisfy both prongs is fatal to the claim. Pryor v. Norris, 103 F.3d 710, 713 (8th Cir. 1997) (no need to "reach the performance prong if we determine that the defendant suffered no prejudice from the alleged ineffectiveness"); see also DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000).

### A. Failure to Investigate

Movant identified six issues he contends his attorney failed to investigate. Some of these issues are repeated in his third ground for relief, which asserts counsel failed to file various motions; the discussions of those issues are intended to address all claims relating to those matters.

#### *1. Search of Trailer*

Movant contends counsel failed to investigate the circumstances surrounding the search of his trailer and failed to file a motion to suppress. To place matters in context: Movant's co-workers noticed N.L. accompanied Movant to a company picnic and were concerned about her age. Some of them checked the internet and discovered a report from the National Center for Missing and Exploited Children identifying N.L. as a runaway. Movant's co-workers then contacted local law enforcement and reported that

4

Movant and N.L. were in a room at the Budget Inn in St. Robert, Missouri, and that Movant's truck and camper-trailer was parked outside. Officers obtained a search warrant authorizing a search of the motel room. The warrant specified the search extended to "any motor vehicles located on the premises which have been registered to or are possessed or owned by James R. Starling, described herein, specifically a red Chevrolet truck with Missouri registration 990-RK2, which is parked in front of the room in question . . . as described herein." Movant contends the search of the camper-trailer was not authorized by the warrant so the evidence seized from within should have been suppressed.

There is not a reasonable probability that the proceeding's outcome would have been different if a motion to suppress had been filed because the search of the trailer does not appear to have been unconstitutional. The warrant authorized a search of any motor vehicles owned by Movant. While it specified Movant's truck, the warrant did not limit itself to Movant's truck. In addition, it is not even clear that a warrant was required. The "automobile exception" to the warrant requirement made a warrant unnecessary so long as the officers had probable cause to believe contraband was located in the trailer – which, if they didn't already possess, was acquired when (1) they found N.L., because evidence relating to her abduction could be located therein, and (2) N.L. told them about the computers and other equipment used to make and store child pornography.[3] Cf. California v. Carney, 471 U.S. 386, 392-94 (1985) (automobile exception applies to mobile home); United States v. Ervin, 907 F.2d 1534, 1538-39 (5th Cir. 1990) (applying Carney to trailer). The exception applies even if the trailer was detached from the truck at the time it was searched. United States v. Navas, 597 F.3d 492, 499 (2d Cir.), cert. denied, 131 S. Ct. 320 (2010).

Even if the search of the trailer was unauthorized by the warrant and the evidence found therein was suppressed, the outcome of this case would not likely have been different. Movant and N.L. were found in the motel room, not the trailer. Movant's

---

[3]These same facts demonstrate that if the search was improper, the inevitable discovery doctrine would have prevented the evidence's exclusion. United States v. Alvarez-Gonzalez, 319 F.3d 1070, 1072 (8th Cir. 2003).

5

cellphone – which contained the pictures forming the basis for Count III – was found in the motel room.  A camera, narcotics, drug paraphernalia, and other evidence of wrongdoing were also found in the motel room.  The only items found in the trailer were three computers, another camera, and forty-five pornographic movies.  None of these items were necessary to establish Movant's guilt on Count III.[4]

## 2. Victim's Statements

Movant vaguely contends his counsel should have investigated and challenged N.L.'s statements.  There are several problems with this claim of ineffectiveness.  First, at the change of plea hearing Movant stated, under oath, that he was satisfied with his attorney.  Plea Tr. at 7.  The statement made under oath contradicts Movant's claim that he wanted his attorney to "investigate" N.L.'s statements.  E.g., United States v. Gomez, 326 F.3d 971, 974 (8th Cir. 2003) (court is entitled to rely on statements made under oath at plea hearing); United States v. Johnson, 751 F.2d 291, 294 (8th Cir. 1984), cert. denied, 471 U.S. 1126 (1985) ("[A] defendant must offer a valid reason why his earlier sworn statements should not be believed.").[5]  Second, there is no indication that the results of any such investigation would have affected, much less altered, the proceedings in this case.  Nothing the victim said would have changed the evidence on the substantive charges or the sentencing enhancements.  Movant agreed with the circumstances giving rise to his involvement with N.L.: that she was unhappy at home and he was trying to "protect" her from people who might take advantage of her.

---

[4]Movant's response to the Surreply points out this explanation has no bearing on the forfeiture of property found in his trailer.  While Movant is correct, the other grounds for validating the search do apply to the trailer.

[5]The Court does not rely on this rationale with respect to the Fourth Amendment issue because it is not clear whether Movant knew the warrant's contents at the time of the plea hearing.  In contrast, at the time of the plea hearing Movant would have known what steps had been made regarding N.L.'s statements, and if he wanted his attorney to do something more he would not have said that he was satisfied with counsel's actions.

6

Finally, Movant does not suggest any results from an "investigation" that could have affected the outcome.

### 3. Miranda Warnings

Movant contends counsel failed to investigate his claim that he was not read his *Miranda* warnings before being questioned at the motel. This claim is contradicted by Movant's statement at the plea hearing indicating he was satisfied with his attorney's actions on his behalf. Moreover, Movant's statements were not important to the outcome of the case because they were not necessary to establish any elements of the crimes charged in the Indictment.

### 4. Coerced Confession

In a related argument, Movant contends his attorney failed to investigate whether his confession was coerced. Movant does not differentiate this argument from the *Miranda* issue, so further discussion is not warranted.

### 5. Evidentiary Hearing

Movant contends his counsel was ineffective for failing to request a hearing to test the sufficiency of the Government's evidence. This "failing" does not violate the performance prong because there is no such procedure.

### 6. Victim's Background

The final alleged failure to investigate involves N.L.'s background. Movant suggests her background should have been investigated in order to respond to the vulnerable victim enhancement. There are two flaws with this argument. First, the vulnerable victim enhancement was based on objective evidence that would not have

7

been refuted by the medical/psychological investigation Movant now suggests. The enhancement was based on the fact that (1) N.L. was thirteen, (2) the relative sizes of Movant and N.L., and (3) Movant's knowledge that N.L. was unwilling to go home because of difficulties with her parents. Sentencing Tr. at 22-23. Thus, there was no prejudice from counsel's supposed failure to investigate. Second, the defense's clear strategy was to emphasize the fact that Movant had not further traumatized N.L. during the course of his defense. Counsel for both Movant and the Government mentioned this as factor when making sentencing recommendations. Sentencing Tr. at 25-26, 28-29; see also Sentencing Tr. at 8-9. The strategy was partially successful in that it affected the Government's recommendation. The strategy ultimately failed, however, because the Court was not swayed and imposed the maximum sentence. This strategy's failure does not mean it violates the performance prong.

### B. Deficient Advice

Movant contends his attorney provided incorrect or faulty advice that induced him to plead guilty. Many of the specific contentions are related.

Movant claims counsel urged him "to just sign" the plea agreement without allowing him to read it, and then instructed him to respond affirmatively to all questions posed during the change of plea hearing. As a result, he did not fully understand the agreement when he changed his plea, and in particular did not know that he was waiving certain rights. These claims are belied by Movant's sworn testimony. Plea Tr. at 4, 7-8; see also United States v. Robinson, 64 F.3d 403, 405 (8th Cir. 1995).

Movant next contends his attorney told him his sentence would be fifteen to seventeen and a half years. This contention is also conclusively refuted by Movant's sworn statements. Plea Tr. at 4-6.

Movant contends his attorney "improperly" advised that the sentence could be 130 years if Movant was found guilty at trial. In making this argument Movant relies on his interpretation of the Sentencing Guidelines' grouping rules. Even if Movant's interpretation and calculations are correct (an issue the Court does not address), the

8

Sentencing Guidelines are advisory and would not have been binding. Counsel's statement was correct: if Movant were found guilty of all charges contained in the Indictment, the maximum punishment permitted by law would have been a sentence of 130 years. Attorneys are not ineffective for making correct statements.

Finally, Movant claims his attorney was ineffective for failing to advise him that the burden of proof at sentencing is lower than the burden of proof at trial. Movant offers no explanation as to why this violated either of Strickland's prongs.

### C. Failure to File Motions

Movant lists several motions that counsel did not file. Most of them relate to the issues discussed in Part II.A, above, and will not be discussed further here. The remaining contentions fail to satisfy Strickland's standard for ineffectiveness. Movant suggests counsel should have requested a Franks hearing,[6] which is part of a challenge alleging law enforcement intentionally or recklessly provided false statements in order to obtain a warrant. E.g., United States v. Finley, 612 F.3d 998, 1001-02 (8th Cir. 2010). Movant does not identify any allegedly false statements in the warrant's supporting affidavit, so there is no basis for considering this claim. He also faults counsel for failing to file a motion requesting material pursuant to the Jencks Act, 18 U.S.C. § 3500. However, counsel had access to the Government's file, see Plea Tr. at 7, and Movant does not argue he was deprived of any information or evidence that was required to be produced under the Jencks Act. Finally, Movant contends counsel should have requested grouping of his offenses pursuant to the Sentencing Guidelines. However, Movant pleaded guilty to only one count of the Indictment, so there was nothing to group.

---

[6] Franks v. Delaware, 438 U.S. 154 (1978).

### D. Failure to Depose the Victim

Movant complains his attorney failed to depose N.L., but this failing cannot violate Strickland's performance prong because the Federal Rules of Criminal Procedure do not provide a mechanism for deposing witnesses in criminal cases. In addition, Movant's defense strategy was to emphasize that he did not compound N.L.'s trauma by requiring her to undergo court-related proceedings. See Section II.A.6, above. Finally, Movant does not suggest how deposing N.L. could have affected the outcome.

### E. Failure to Object at Sentencing

Movant presents a variety of arguments regarding the vulnerable victim enhancement. He claims his attorney did not object to the enhancement, but this is incorrect. A written objection was filed in response to the PSR. Counsel also objected at the sentencing hearing. Sentencing Tr. at 10-11.

Movant insinuates the Plea Agreement was somehow violated because the enhancement under section 3A1.1 was not contemplated by the parties. The Plea Agreement was not binding on the Court, and the Plea Agreement did not bind the Government to a particular position with respect to this enhancement. Thus, there was no violation. Movant was warned of the possibility (which exists in every case) that the Court might apply the Sentencing Guidelines in a manner not contemplated by the parties. Plea Tr. at 5-6.

In large measure, Movant's argument attacks the applicability of the vulnerable victim enhancement, and not any failing on his attorney's part. Such arguments are barred by the same waiver that the Court of Appeals upheld in dismissing his direct appeal.

### F. Failure to Contest the Nexus to Interstate Commerce

Movant faults counsel for failing to challenge the connection between his crime and interstate commerce. Movant was not prejudiced by this failing because the cellphone was manufactured in Korea, so the objection would have been rejected. E.g., United States v. Nichols, 574 F.3d 633, 637 (8th Cir. 2009) (nexus with interstate commerce established if equipment used to make pornography moved in interstate commerce).

### G. Failure to Meet ABA Standards

Movant alleges Counsel "failed to meet minimum standards of representation of the ABA Code," but fails to describe those failings. His argument fails to suggest any basis for concluding either of Strickland's prongs, so the claim must be rejected.

### H. Conflict of Interest on Appeal

Approximately two months after sentencing, Movant sent a letter to his attorney expressing dissatisfaction with his representation. Counsel's response stated that Movant's dissatisfaction suggested a conflict of interest existed that would require him to seek leave to withdraw. Movant replied in a letter reiterating his dissatisfaction and giving counsel permission to attach his (Movant's) letters to such a motion. Counsel filed a Motion to Withdraw on November 21, 2008, and attached both of Movant's letters.[7] One week later, the Court of Appeals denied the Motion to Withdraw.

Movant's attorney did all he could to be removed from the case. Attorneys cannot unilaterally decide to withdraw: approval from the Court of Appeals was necessary. Counsel requested permission, which is all he could do. The denial of the

---

[7]Counsel's intervening letter to Movant was attached to the motion initiating this case.

motion indicates the Court of Appeals did not believe there was a conflict of interest. This Court cannot issue a ruling that conflicts with a ruling of the Court of Appeals, so Movant's claim must be rejected.

## III. CERTIFICATE OF APPEALABILITY

In order to appeal, Petitioner must first obtain a Certificate of Appealability. 28 U.S.C. § 2253(c)(2) provides that a Certificate of Appealability should be granted "only if the applicant has made a substantial showing of the denial of a constitutional right." This requires Petitioner to demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotation omitted). When a Certificate of Appealability is denied, the court is required to "state why such a certificate should not issue." Fed. R. App. P. 22(b).

*Failure to Investigate* – Movant's claim that his attorney failed to investigate does not require further consideration. In most respects, Movant's arguments are belied by his sworn statements at the change of plea hearing. In other respects, the Record conclusively establishes Movant was not prejudiced by the alleged failings.

*Deficient Advice* – Most of Movant's claims alleging he received deficient advice are contradicted by his sworn statements. His claim regarding the maximum possible sentence fails because the advice he received was correct. Further proceedings are not warranted.

*Failure to File Motions* – Most of the motions identified relate to the matters Movant contends were not adequately investigated. There are no allegations of prejudice arising from the failure to file other motions.

*Failure to Depose Victim* – There being no mechanism for deposing victims, no jurist could conclude counsel was ineffective for failing to do so.

*Failure to Object at Sentencing* – Movant's claim is belied by the Record, which conclusively demonstrates counsel objected to certain enhancements at sentencing.

*Failure to Contest Interstate Commerce* – The Court of Appeals has consistently held that the necessary nexus with interstate commerce is established if the equipment used to manufacture, store or distribute pornography ever previously crossed state lines. Counsel's failure to raise this issue cannot violate either of <u>Strickland</u>'s prongs.

*Failure to Meet ABA Guidelines* – Movant's claim is devoid of detail, and no jurist could conclude that counsel violated <u>Strickland</u>.

*Conflict of Interest* – The Court of Appeals effectively concluded there was no conflict of interest when it denied counsel's motion to withdraw. Consequently, further proceedings are not warranted.

## IV.  CONCLUSION

For these reasons, the motion for postconviction relief is denied and the Court declines to issue a Certificate of Appealability.

IT IS SO ORDERED.

/s/ <u>Ortrie D. Smith</u>
ORTRIE D. SMITH, JUDGE
DATE: January 25, 2011            UNITED STATES DISTRICT COURT